All right, Ms. Hemm, do you wish to reserve any time? All right, thank you. You may commence. Good morning, Your Honors, and I apologize if you can't hear me. I've got a tremendous cold, but I will do my best. I gather, as you've stated, you've read all of the issues that are present in this case, and this is an issue of family law intersecting with bankruptcy and the issues that arise when we're trying to sell property and make sure that it's done in a fair manner, knowing that the bankruptcy court does have jurisdiction to make those decisions, having entered into many of them myself as a practicing attorney in other cases. But the issue of concern here is that the sale of this particular piece of property, which was the prior family residence of both of these parties, both the debtor and the non-debtor spouse, from all appearances and from the values that were provided and the information that was provided to the court in writing by the trustee does not indicate that the entire community property value was taken into account, which is what the trustee is required to do, is to look at the entire value of the community property asset because when the bankruptcy estate is established, these parties were married at the time that the debtor filed. So therefore, the entire community property value of everything, as I explained to clients, it's like a big pot and you dump the entire works in, businesses, properties, houses, cars, animals, you name it, goes into this pot. So your argument is that after paying the first trust deed, the estate would have taken 100% of the proceeds, not 50%? The estate should have taken 100% of the proceeds and then allocated to husband what his portion is and then the portion to wife. The problem was in this case that the first trust deed was not $562,000. It actually was only, if I recall, and my mind is not there, it was in the neighborhood of about $340,000 to $400,000. Where is the evidence of that in the record? The evidence of that in the record was on her schedules. Her schedules did not schedule it at $300,000. Her schedules scheduled it, I think, at $400,000 something. It may have been $430,000. $490,000, I think, but I'd have to go back and look. But I'm pretty sure she scheduled it. The 560 number is kind of a phantom number in this thing, I agree. That is correct, and that is the number that was used, which is not the correct number because that was the number of the original note of which this original note is actually a line of credit. Where was that? When you say that was used, what do you mean? What I mean by that was used is that is the number that the trustee originally put in the valuation when they submitted how they were going to calculate the number that husband needed to pay to the estate to purchase out what I'm trying to figure out is the community's interest in this home. That is where the waters seem to be very muddied in that the original note way back when these parties purchased this home was $562,000. Right. That got paid down during the marriage. But because it was a revolving line of credit, it went back up, then it went down, and at the date of separation was a completely different number, and then it was the number I set forth on the schedules, which if memory serves me correct and you're correct, it's $430,000. Okay. That is the number from which the trustee should have then used that as being allocated to husband as his separate debt. We also have the issue of the liens against this home. Why is that his separate debt? Only he signed for that debt? Yes, he did, Your Honor. Okay. The other issue in this case, and that brings me to that point, is that these parties purchased this home jointly during the marriage. It was not a property that husband owned prior to them being married. And that is suggested in the record that he brought into the estate. But in the final analysis, the trustee's analysis doesn't recognize that there might be litigation in connection with this property, but doesn't appear. Where in the record does the trustee afford him any specific monetary advantage based on if that's a misconception? I'm not understanding where you're going, Your Honor. I apologize. Where I'm going, it's a bad question, so let me rephrase the question. You're arguing, I think, that the trustee incorrectly in his negotiation assumed that a separate property interest rather than a fully community property interest. And having read the record, I see the trustee assuming there would be litigation, but I don't see him necessarily putting a dollar value on that litigation based on a mistaken assumption that the property was the husband's separate property. That's correct, Your Honor. Okay. All right. And so now that is an issue I believe that the bankruptcy court needs to resolve prior to actually we need the bankruptcy court, because this is a core issue, there needs to be a determination as to what is separate property versus what is community property, and then what does husbands buy out of that. And the reason that I make that statement is once there is a finding in the bought out, that's now raised judicata as to the family law issue, and because I'm handling both sides of this case now, I can't go back to the state court and say, well, bankruptcy court got it wrong and husband paid this amount, but he should have really done this. I now need to address the issue of this is the amount that the debt really was at the time that the trustee made this negotiation with husband to sell it. Is the trustee, is the court obligated to do this with mathematical precision? I mean, doesn't the court have enormous discretion in looking at all the factors, including the difficulty of getting this gentleman off the property, which I think you would concede, the record seems to indicate he's not going to leave happily, which is going to complicate his sale. He's probably not going to happily allow the property to be shown. So there's all sorts of intangible things. Doesn't the trustee get to take those into account in terms of his business decision and doesn't the judge get to take those into account in his decision whether it's in the best interest of the estate to do it? Well, Your Honor, first of all, we're looking at the difference between $430,000 and $562,000. So that's a huge difference in between the amount. I can also state that looking at this case, husband was. Where's the $562,000 come from again? That was what the original note was. Okay. All right. I'm with you now. Thank you. 11 years ago. But what's owed now is the $430,000, which is going to be allocated to husband for him to now continue to pay. But there's the difference in between. That should have not been factored into that. It should have been the $430,000 from the $765,000. So therefore. Well, the value of the property was $765,000. That's what the parties agreed to that I can see from the record. I don't see that from the record. You scheduled it at $650,000, correct? She scheduled it at $650,000. There's somewhere in the record that says it may have been $750,000. We've never, never in any of this. You didn't agree to that. Right. There was a broker's price opinion at $700,000, but also the comment that to get that was going to be extremely difficult because are you going to argue that this gentleman was going to be cooperative with the trustee? I think he would have been based on what I have learned. And I've now been in this case and I actually have. Is there anything in the record that indicates that? Because the record strongly indicates the belief on the part of the broker who did the broker's price opinion, the trustee, and frankly the things that your client said. She had a restraining order against him, didn't she? She had a restraining order against him. And doesn't he have guns or access to guns? Isn't there a gun shop out there? There was. The gun shop has been closed and we have no idea where the guns are. And that's another whole issue, but that's not before the court today. Well, my point is that the court and the trustee had knowledge that there was a gentleman out there who was subject to a domestic violence restraining order. Correct. Who had a veterinary practice and a gun shop on the property, who didn't cooperate with the broker, and the broker saying, I don't think he's going to be, you know, he's showing me all the bad bits of the property. That's in the record. There was not a gun shop on the property. I thought there was. The gun shop was downtown. Okay, but he owned a gun shop. And now we don't know where the guns are. And the guns that, in fact, were on the property were removed by the debtor when she took possession of the property. So there were no guns on the property that anybody was aware of at that time. But it comes down to, again, that simply because there still has to be an and 100% of the community value should have been put into the pot and then reallocated accordingly back to husband and then the other portion to wife and had a clean division. That did not happen. Why was that required? I thought Judge Carroll was very clear that he was approving a sale of whatever interest there was. That was the whole point of this is that the trustee got to avoid this. So I don't understand why you believe this is raised judicata because I understand that the bankruptcy court was clear that it was saying whatever. And that seems to be left for the state court and the divorce to determine. That's not the reading that I view the record as saying, is that this is a final determination as to what husband is paying into it. Well, that's what he's buying. It's subject to any other determination other than what the bankruptcy court has now determined to be that final finding. I'm not sure that – I don't think that was Judge Carroll's, given his last comments on the bench, that he was approving the sale of whatever the estate had. You've got right about three – a little over three minutes. So do you wish to continue or do you want to reserve? I'll reserve, Your Honor. Okay, thank you. I'm William Bell, Bell & Burkhart. I represent the trustee in bankruptcy. Your Honor, you referred to the trustee a couple of times as he. It's actually she, which I thought was sort of a subtle irony. And I actually know that. I apologize to her. Yes. So the first thing I heard Ms. Hem say was that jurisdiction wasn't really disputed, which, of course, it can't be in any good faith. But if you look at the transcript, Judge Carroll – and it wasn't Ms. Hem then, it was Mr. Ramey who was then representing the debtor – said, so, Mr. Ramey, the only thing you're contesting is jurisdiction, right? And Mr. Ramey said, right, that's the only thing I'm – so I think that that's the only issue this court could hear, this panel could hear. There was a motion pending to strike a second document that was filed. And, yes, he said that there was no ruling on that. So isn't the – where in the record did he strike the document that had other arguments in it below? I don't believe he did strike it. I did make a motion because it's fingernails on a chalkboard to me. When people file things late, I hate it. And so I filed a little motion just to sort of express to the court my annoyance with it, but the court did not honor that, didn't strike the pleading. But I think that when counsel stands at the podium and says, the only issue before you is jurisdiction, I believe that they're entitled to represent their client and make that representation. So I think that really all we have is jurisdiction, and there really isn't any possible good-faith argument that the bankruptcy court doesn't have jurisdiction to determine what property the estate is, to determine that the property can be sold, to determine a fair sales price for the property, and to compromise a controversy between the estate and another party. I don't think that really anybody can argue that, and I don't think Ms. Hem did. I agree. So that's really, now, of course, you know, we do want to talk about value. I think there's been a big misconception here by the debtor, which has kind of whirmed its way through this whole thing. I think the debtor believes we sold half the property, but we sold the whole property. Dr. McClenney, and I call him Mr. sometimes, but he's a veterinary, and I believe he's entitled to be called doctor. Dr. McClenney had a couple of arguments on why he had a separate property interest, and one of them was that I think he owned the property before marriage. I think that he had an argument about that anyway. And then he also had an argument. The dissolution had been going on for quite some time by the time we got to the sale. He'd been in the property by himself for a year, year and a half, something like that. During that entire period of time, he made all the payments. So under California dissolution law, there's going to be offsetting things. The community gets an interest from him for his fair use of the property, and he gets a credit from the community for the fact that he's making the payments on the property. That might come out plus, it might come out minus. Of course, his allegation, his contention, was that it gave him a separate property interest, and that's one of the things we resolved through the compromise. But we're talking about a marginal amount of money that was his in terms of his separate property interest. Now, it was frankly enough, and it's an unfortunate thing from the trustee's perspective, but his allegation that he had a separate property interest makes it difficult for other bidders to come. Does another bidder want to come and buy 96% or 98% of a piece of property? Dr. McClenney is a dangerous person. The debtor says this all the time. You have the declaration from the trustee about what happened with her broker when he went there. He's a dangerous person. The court asked him questions about guns, and I'm a little unclear about exactly what's in the record, though there were a lot of pleadings that are before you. Dr. McClenney was not legally entitled, I believe maybe that's now gone away, to have a gun because he had been convicted of a gun offense. This was with his prior wife, not Cynthia McClenney, but he had a prior wife that he had set off a gun when he found out. And so he was not allowed. He has a massive collection of guns that are assets of this estate. They're in the possession of Cynthia McClenney. There are other guns there as well, but I don't know if that's in the record. What is in the record, of course, is the fact that he was uncooperative, that he stressed all the negatives of the property when the broker went there. It's frustrating to a trustee to allow someone who's in the property to get a benefit out of their own uncooperativeness, but that's the reality of being a trustee in bankruptcy. So the number, by the way, on the trustee, it was before the court, and it's both in my brief and in the trustee's declaration, which is docket 96, I'm not sure which transcript number that is, but it's the motion to sell, the second one, and it was $409,018. That's what was owed on the first as of the time of the hearing, or pretty close, the last statement we had. The 430 was what was owed approximately when the bankruptcy was filed. He'd paid down presumably from separate property. Seems like something like that seems reasonable, yes. So that's about what was owed. So we go from 410 or 430, any way you want to look at it, to plus the 130 he paid gets us into the mid fives, and then we had a completely no broker's fee, no escrow. No, I guess we did pay an escrow, but I think Dr. McClenney paid for it all. We didn't pay anything towards that, and that's around figure $50,000 of value to the estate. I don't know if we actually had evidence of that, but Judge Carroll's been on the bench for, I don't know, 20 years. You're experienced judges. I'm sure you all know roughly what sales costs in an area are, and that gets us into close to $600,000, or if not, they're in value. The value issues testimony that we had was we had the debtor's schedules, which said $650,000. We had the trustee's broker who said, well, we might get $700,000, but there are problems. And then we had a declaration from the debtor, which I believe she was judicially estopped to make, saying it was $750,000. And, I mean, I suppose as a part owner of the property, she might have the ability to make a statement on value, but the judge isn't required to accept that. So, okay, so maybe we didn't get 100% of fair market value, but we're in the range. And as a trustee, let's face it, you don't get top dollar. Everybody knows you're in trouble, you've got problems, and plus we had this whole issue with the hostile occupant, where our choices were to really get the best price for the property, we had to get him out, which means, I guess I start with a turnover complaint in the bankruptcy court, that's an adversary proceeding, and then potentially at the end of that adversary proceeding, I might have to go back to the superior court and do an unlawful detainer. I wouldn't have been surprised at all. So... Was his veterinary practice out there? Yes, his home and his veterinary practice, both on the premises. There's a number of buildings. So, I mean, it's a, again, it's too bad that he got the benefit of his own lack of cooperation, both threatened and perceived, but that's the world we live in, and we were able to get a reasonable price for the property based on all the different things that were there, and that's what the judge found, that the trustee's discretion was adequate and that this is a reasonable price. And I think that Judge Carroll was certainly affected by the lack of bidders. We had two sale hearings. The first one got continued because... I know the judge in his oral findings said he didn't think the evidence was sufficient. My memory is in the March hearing that he thought that I hadn't sufficiently raised the fact we were compromising controversies in my notice, and so I re-noticed it. But that's a grace note. But we did come back with more evidence as well, and so we had two sale hearings. We had no bidder at either one. We actually got Dr. McClendon to raise his offer by $30,000 at the time, and so that was to the benefit of the estate. Let me ask you about the compromise. In the documents, it seems to me you were merely compromising claims against the property issues relevant to this. You're selling him whatever the estate has in this property, but you're not compromising her claims in the family court. Absolutely not. So to the extent she has substantial claims in the family court, she can go in and presumably get the family court to give her the entire property. Yeah, well, of course, because now it's his. But perhaps they couldn't award her the property, but they could give her a money judgment, which she could then take as a lien on the property. And I think that one of the big ones here is, one thing we never worked out, because the debtor in her original schedules scheduled the lien, the Wells Fargo debt, the secured claim, as her own debt. She didn't say she didn't know that. And then more recently she said that that was a separate property debt of Dr. McClenny's. And I think that if she goes to the Superior Court and says, hey, he got $409,000 of his separate property paid by our community property, I think that the Superior Court's still got jurisdiction to compensate her for that. I don't think we resolved that. The other thing we did resolve, it's a complicated thing when you have these marital cases, because if we got this money in, now we've got a pool of community property, and yet we've got two sorts of sets of debts. Some are community debts, some are separate debts, some are hybrids because she might have a credit card and some of it might have been before separation and some of it might have been after. Plus she had this student loan, which typically is a separate debt, but I've seen them held to be community debts in certain circumstances. So there would have been a whole confusing thing about what has to happen with the community property and what pool does it go into, and we resolved that with Dr. McClenny as well, that he removed all claim to whether we could use those funds to pay all the debts of this estate separate and community. Ms. Hemden. So, in effect, what you want us to do is to monetize the advantages of this arrangement. We have a sale and we've created a fund of money based on a piece of property, and deciding whether the compensation was reasonable and adequate, you want us to monetize that and to say, look at the savings the trustee had. We don't have to litigate this issue. We don't have to litigate that issue. Do you think the judge did that? Sure, that's the whole 90-19 motion right there. Because that's the ANC factors are, are you going to win? How much is it going to take to get there? And what's the chances you don't win? That's way oversimplified, but that's what ANC says. And so that's why it made sense to do this. And in addition, ANC includes the paramount interest to creditors, and we had a situation in which, with this sale, that we were in a position to pay all claims against the estate, 100 cents on the dollar. Of course, that's become more complicated because now we've got additional administrative costs, but we're still going to be able to pay all claims in full. It's just become harder. And so that's the paramount interest to creditors right there. I mean, I believe that the trustee has to take the interests of the debtor's residual interest as well. We don't throw that in the trash, but it's the paramount interest to creditors are more important. So those are the things we were looking at. That's what we're doing, and there's stuff in the brief. Ms. Hamm hasn't raised this, about how somehow it's to the debtor's detriment that we're going to pay her non-dischargeable student loan. It seems to me that's a benefit to her. And I know Mr. Ramey would talk to me and go, well, she's paying that. And I go, well, if we pay it, she doesn't have to. I don't see where that's a harm. Do we even have to? Is that necessarily something that was decided in connection with the issues before us? It seems to me it's not. It's not. There's a lot of stuff in the brief that's not before you that's really not relevant to this determination. But, I mean, the argument that Ms. Hamm gave was considerably more focused. Okay. All right. Oh, thank you. Thank you very much. Thank you. Oh, I just want to say one more thing. I think the mootness issue, I guess, since I think that the sales moot, it closed long, long ago. The debtor never sought a stay. There's stuff in the brief about the fact that they did seek a stay before the bankruptcy court. But if you look at the transcript, Mr. Ramey said, well, gosh, Your Honor, have you waived the 14 days? And Judge Carroll said yes. And he says, well, I might want to make a motion for stay. And Judge Carroll said, well, you know how to file it. And that's not a request for a stay. That's a suggestion you might make a request for a stay. And then I guess when they responded to our motion to dismiss the appeal as moot, that might have been closer to a request for stay. But by then, that was closing the barn door after the horse was gone. And the law says it's got to be either fraud, collusion, or an attempt to unfairly prejudice oneself against other bidders. And I don't think there's been any showing of any of those things. So there weren't any other bidders. Thank you. Thank you very much. All right, Ms. Hemm. Thank you, Your Honors. I just want to touch on the issue that counsel raised on the issue of liens buyout. Therein lies the bigger crux of the issue from my perspective in looking at this. There were liens against this property for child support, spousal support, attorney's fees out of DVTRO actions. Those liens, from what I can look at from the record and from what I'm seeing in the statements, those liens were not bought out. Well, don't those liens continue? I was going to say the same thing, meaning they're still on the property, right? Right. Well, that's the problem in that those liens are actually property of the estate because those were pre-petition debts that were scheduled and owed to the debtor by the in-house person or the husband now residing in the home. So those liens were pre-petitioned. They're property of the estate. They should have been paid into the estate so that they could be dispersed because anything post-petition liens, yes, those are going to ride with the property. But that doesn't change anything, right? I mean, those liens are still there. The trustee could administer them if it's necessary. If not necessary to pay claims, they'll be abandoned to the debtor. How does this affect those liens at all? Well, those liens should have been paid in at the same time that the husband bought out the community portion of the property. Why? Because those liens are property of the estate. But why did it have to be done at the same time? Why did it have to pay the liens and buy other interest in the property at the same time? Because now you're leaving the debtor to not only have to incur additional attorneys' fees to go back to the family court, and I can tell you how very difficult it is to try to sell property, to get child support, spousal support paid. It is extremely time-consuming. It is very involved. I already know I've had to do this in cases. We're looking at thousands and thousands of dollars to get property sold to try and enforce the liens. So you want the trustee to do that for the debtor's benefit at the expense of the estate? It would be bringing money into the estate that then could pay her separate property debt so that husband doesn't have an argument that any of the money would pay the separate property debt potentially going towards her student loans. But it looks like we already have enough money in the estate after the sale to pay the joint and separate debts, probably, is what I understand. But husband did not waive that right, and I have not seen that in the documents. So that's where I'm a little concerned because on both of the sale of the properties, husband's still saving his right to be able to deal with those separate property payments in the family law court, which then leaves, again, those liens against a piece of property that now husband has possession of that, quite frankly, I don't see how a family law court's going to sell it. Well, they're claims, so if you have liens, you realize on the lien, however state law allows. I mean, I'm struggling with the problem here because you are conflating the bankruptcy system. The bankruptcy system is not designed to be a marital dissolution alternative, and there are certain issues that routinely go to the family law courts, and they're well-equipped to handle them. So I don't know why liquidating the property and paying creditors in the estate, which the trustee is charged with doing, when she did that, I don't understand the problem. But she is also a creditor in part because she is owed money from these liens that are against a property that is now being purchased back by husband, and she is a creditor in those such that the trustee then has to protect for her. Does she not have discretion to decide the order of liquidation of assets? I'm sorry, repeat? Does the trustee not have discretion as to the order of liquidation of assets? Yes, the trustee does. And having liquidated assets sufficient to resolve the bankruptcy issues, is she obligated to or even have jurisdiction to take other acts? Part of that liquidation would involve the debtor who is actually a creditor of her ex-husband. Trustee is also obligated to cover for her as the creditor. And the reason I know this, I've had to do it in another case, and we ended up with a ruling that in fact because my client held a lien against the husband's business, the husband not only had to buy out the community, he had to buy out the lien of my client who was the debtor because she was actually the creditor of the husband as the liens against the business. So the trustee had a duty to cover for both. I don't know that case. That would make perfect sense to me if that were doing both of those things, selling the business and enforcing the liens, were necessary to pay creditors. It wouldn't make so much sense to me if doing one or the other of those were sufficient to pay creditors. But I don't know the case you're talking about. All right. Well, your time is up. Thank you very much for your arguments. This will be submitted.
judges: Taylor, Faris and Spraker